UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| *In the Matter of the Arbitration Between:* ) <br> ) <br> MICHAEL HELMSTADTER, d/b/a ) <br> ALPHEIUS, and d/b/a ) <br> AUCTIONMEASURES.COM, ) <br> ) <br> Petitioner, ) <br> ) <br> and ) <br> ) <br> SELLATHON, INC., ) <br> ) <br> Respondent. ) <br> ) | Miscellaneous Business <br> Docket No. _____ <br><br> 04 MBD 10189 |

## AFFIDAVIT OF MICHAEL HELMSTADTER

I, Michael Helmstadter, state that:

1. I am a Massachusetts resident, with a residential address of 28 Taylor Hill Road, Montague, Massachusetts 01351. I work as a consultant providing software development services.

2. I offer this affidavit in support of my request to stay the litigation filed against me in Kentucky, and in support of my petition to compel arbitration, which is being filed in federal district court in Boston, Massachusetts.

3. In the fall of 2003, as part of my professional activities, I was working on a web metrics project, which involved the design of mechanisms to permit a website to capture certain metrics. From that effort, I registered www.webmeasures.com in or about September of 2003, which employed the web metrics technology with which I was

working. The webmeasures site is not yet fully operational as a commercial service, but has beta customers.

4. The underlying technology upon which www.webmeasures.com is based is known as "Javascript-based tagging." This technology is widely employed in a range of commercially available web-based services.

5. During my work on the webmeasures project, it occurred to me that the script-based tagging technology could be applied to track information and measurements of interest to eBay.com users. In October of 2003, I conducted several proof of concept tests to ascertain the technical viability of using Javascript-based tagging technologies to track items on eBay®. At that time, I also executed a web search to determine whether or not there were similar products already in the marketplace. My search produced the name of only one entity that was employing Javascript-based tagging, a site called www.baconbuttie.co.uk. The baconbuttie website offered a free service, which allowed eBay® sellers to track certain information of potential interest to auction sellers. I explored the site to see how it was set-up.

6. In December, I registered the domain www.auctionmeasures.com, and executed another web search to see what, if any, services existed, and my search produced the names of two entities: www.sellathon.com and www.baconbuttie.co.uk . Sellathon's website did not exist when I conducted my earlier search in October. Sellathon's public announcements state that it became operational around November 7, 2003.

7. Already familiar with the baconbuttie offering, I explored www.sellathon.com. When I first entered the Sellathon site, it advertised that I could

"[t]ry the Ultimate eBay® Visitor Tracker for 30 days…Absolutely Free!" I then signed up for the free trial so I could explore the Sellathon site as it would appear to a user.

8. I was first required to provide certain basic user information, select a username and password, and check a box assenting to a Terms of Service agreement ("TOS"), which was located in a separate part of the website. In other words, the TOS, itself, was not put before me at the time I was required to assent to its terms. To view the language of the TOS, one must click on a link, and go to that portion of the Sellathon website. It is not the typical "clickwrap" or "browsewrap" electronic agreement, which is used in internet commerce. I next set-up a "test" eBay® auction to see how the "View Tracker" service appeared to a user. I checked the Sellathon site occasionally thereafter to see what information had been gathered in response to my test auction. All of this occurred in or about December of 2003. A copy of the TOS is attached as Exhibit A.

9. I continued my development of www.AuctionMeasures.com, a web-based service for a fee, which allows eBay® sellers to track information about visitors to their auctions, including high bid, high bidder, items being watched, and total visits to the auction.

10. The Auction Measures website became active sometime in January of this year. In an electronic mail, dated February 9, 2004, which was addressed to me from W. Keith Ransdell, Esq., Attorney Ransdell accused me of infringing upon Sellathon's "proprietary information," and demanded that I end my efforts to offer information tracking services through the Auction Measures website.

11. My attorney, James Wodarski, responded to Mr. Ransdell's e-mail in a letter, dated February 11, 2004, and informed Mr. Ransdell that no basis existed for the

allegation that I infringed any proprietary information, or had otherwise breached the TOS. Mr. Wodarski's letter also stated that the TOS's non-competition provision was likely "unconscionable and unenforceable." In an effort to resolve the issue, however, Mr. Wodarski offered to discuss this matter with Attorney Ransdell, and concluded the letter by stating that "[i]n the event I do not hear from you, I will consider this matter resolved, and I will advise my client accordingly."

12. Neither Mr. Wodarski, nor I, ever heard from Attorney Ransdell in response to the February 11th letter. The next correspondence I received, in late March, was a certified letter from Attorney Ransdell, which I did not claim because it was my understanding that Attorney Ransdell had an obligation to communicate with my attorneys and not me directly.

13. Two weeks ago, I learned from my attorneys that Attorney Ransdell faxed to them a copy of a complaint filed against me in federal district court in Lexington, Kentucky. The fax is dated June 9th, and is addressed to James M. Wodarski, Esq. Mr. Wodarski, and the firm of Mintz Levin, are identified as my attorneys on the Civil Action Cover Sheet, which was included in the papers that Mr. Ransdell faxed, yet they were not informed of the fact that an action had been filed until the June 9th letter. According to the stamp on the complaint, it was filed over three months ago on March 18th.

14. I have reviewed the allegations in the complaint, and they are baseless. Most importantly, however, the TOS, which Sellathon drafted, has a binding arbitration provision. Neither Sellathon, nor its counsel, ever provided me with an opportunity to arbitrate any of the claims asserted in the complaint. I want to enforce the binding

4

arbitration provision, and arbitrate the entire dispute, which will include, *inter alia*, my request for a declaration that the Agreement's egregious anti-competition clause is void and unenforceable.

15. Beyond the issue of arbitration, it is noteworthy that throughout Sellathon's complaint, Sellathon mischaracterizes the nature of my brief and limited interaction with its website. The complaint repeatedly accuses me of gaining access to, and misappropriating, Sellathon's "proprietary software." That is simply untrue. It then accuses me of "using and altering" the "proprietary software," which again is not only untrue but impossible.

16. I was never granted access to anything on the Sellathon website other than the ability to interact, as a user, with the View Tracker service. None of the information contained in the visual presentation of the website is confidential or proprietary. I was never provided with any access to any technical information from which I could discern anything about Sellathon's software, proprietary or otherwise. I had no access to any executable code or source code. In any event, as I stated earlier, this script-based tagging technology is commonly used in a variety of applications, and has been well known to me for some time. The complaint infers that I was given access to some CD full of valuable software; nothing could be further from the truth.

17. The complaint then goes on to say that I am "making Sellathon's proprietary information available on the open market" when that is impossible because I do not now, and never have had, any access to any of Sellathon's proprietary information. The only thing I have done is create a website using only my knowledge and expertise as a software designer, which provides information tracking services to eBay® sellers.

5

18.  Sellathon is improperly trying to prevent competition, not to protect its proprietary information, if it has any. I look forward to defending myself against Sellathon's specious and malicious claims, but, as required in the TOS, I ask that I be able to do so within the context of a binding arbitration.

The statements made in this affidavit are made under the pains and penalties of perjury this 2nd day of July, 2004.

_____
Michael Helmstadter

LIT 1467894v1

6